Faircloth and others *vs.* Jordan.

---

No. 75.—S. FAIRCLOTH and others, plaintiffs in error, *vs.* BENJ. S. JORDAN, defendant in error.

[1.] Under the sixth section of the Judiciary Act of 1799, the Superior and Inferior Courts may, in a proper case, compel the production of documents to be annexed to interrogatories propounded by the party calling for the document, provided those Courts require a copy of the document to be left in the place of the original, to be used as the original, in case of the non-return of the original; and also require bond and security from that party to the party producing the document, conditioned to be void, only if the document be not lost, destroyed or injured, but be restored to the latter party, as soon as the object of its production shall have been accomplished.

Ejectment, in Dougherty Superior Court. Decision by Judge PERKINS, May Term, 1854.

This action was brought by S. Faircloth and others *vs.* Jordan, for a lot of land. Jordan filed a petition to the Court, stating, that both plaintiff and defendant claimed the land, by deeds, from one John Baugh; and that he expected to prove, by the depositions of Baugh, that plaintiff's deed was a forgery—that Baugh lived in Newton county. He prayed that the original deed be delivered to the Clerk, to be attached to interrogatories—the Clerk keeping a copy. This petition was supported by the statement of counsel, in their place, that they expected to make this proof.

The Court granted the order prayed for, and this decision is assigned as error.

PLATT, represented by LYON, for plaintiff in error.

VASON & DAVIS, represented by SULLIVAN, for defendant.

*By the Court.*—BENNING, J., delivering the opinion.

[1.] In this case, the order of the Court excepted to was, "that the plaintiffs do file, in the Clerk's office of this Court, the original deed from John Baugh to John Carmichael, under which they claim, subject to the inspection and control of defendant and his counsel, to be attached to interrogatories, for the purpose of enabling him to attack it for forgery, upon leaving a certified copy thereof, in the Clerk's office, to be used as evidence in the cause, in the event that said original deed is lost, or not returned into Court".

And the only ground of exception to the order was, that it required "an original deed, the property of plaintiff", to be deposited in the Clerk's office, "in order that the same might be attached to interrogatories, and sent to a remote part of the State".

Faircloth and others *vs.* Jordan.

Was this a good ground of exception? That is the only question.

The sixth section of the Judiciary Act of 1799, gives power to the Superior and Inferior Courts to require, on ten days notice, " either party to produce books .and other writings, in his, her or their possession, power or custody, which shall contain evidence pertinent to the cause in question, under circumstances where either party might be compelled to produce the same, by the ordinary rules of proceeding in Equity".

The power is given to Courts of Law, " under circumstances where" it exists in Courts of Equity, " by the ordinary rules of proceeding in Equity".

The power, as it exists in the English Court of Equity, is thus stated by *Adams*, in his *Doctrine of Equity: "* A defendant is also bound, if required by the plaintiff, to set forth a list of all documents in his possession, from which discovery of the matters in question can be obtained, and, if the possession of such documents, and their character, as fit subjects of discovery, can be shown from the answer, he must permit the plaintiff to inspect or copy them. (*Id.* 12.)*"

" If he admits the possession of such documents, a motion is made, that he may produce them, that the plaintiff may have liberty to inspect and copy them, and that they may be produced before the examiner and at the hearing of the cause". (*Id.* 13.)

" Upon this application, an order will be made, that they shall be deposited with the Clerk of Records and Writs, or if a special reason be shown, *e. g.* their being in constant use in the defendant's business, then in the defendant's own office". (*Id.* 350.)

This, doubtless, is a true, general statement of the power, as it exists in a Court of Equity, " by the ordinary rules of proceeding in Equity".

This power, then, as it exists in Equity, is broad enough to justify an order requiring the document sought for, " to be deposited *with the Clerk of Records and Writs*"; or in a spe-

cial case, "in the defendant's own office"—subject to the inspection of the plaintiff, and further requiring it to be produced "*before the examiner*, and at the hearing of the cause".

Now, when the document, under such an order, is produced before "the examiner", an opportunity is afforded to impeach it. The plaintiff may, on his part, produce before the examiner, his witnesses for its impeachment, and have their depositions, to that effect, taken by the examiner, for he may compel his witnesses, no matter where they reside, to come before such examiner.

All this, the plaintiff can do in Equity, under the order to deposit the document, and to produce it before the examiner—that is to say, under an order which, at no time, puts the document in the *possession or power* of the party calling for it; but ever keeps it in the possession or power of the party called upon for it, or of the Court itself.

It is true, that the Court of Equity, in which this power thus exists, is the English Court of Chancery, of which an "examiner" makes part, and that an examiner makes no part of the Superior Courts of this State—in which Courts exist the powers of a Court of Equity. But, then, it is given to these Courts, themselves, to "exercise the powers of a Court of Equity, to compel parties, in any cause, to discover, on oath, all requisite points, necessary to the investigation of truth and justice"; and it is made their duty to see to it, that "the proceedings, in all such cases, shall be by bill, and such *other* proceedings as are *usual* in such cases, until the setting down of the cause for trial". (*Cobb's Dig.* 1143.)

Under this grant of power, and this imposition of duty, the duties performed in the English Court of Chancery, by the examiner, are to be performed by the Superior Courts themselves, if, indeed, those duties have not been abolished by the Statute regulation, on the subject of evidence in Equity, viz: that which requires the evidence in Equity to be "oral", or to be otherwise within the rules of the Common Law. (*Act of 1797, and Cons. Jury Trial.*)

The effect of our own legislation is such, that the command

to produce "*before the examiner*", must be left out of the order to produce, made by our Superior Courts, acting as Courts of Equity. That order must, in general, be confined to requiring a deposit of the document with the Clerk, subject to be inspected and copied, and a production of it on the trial.

' Under such an order, the plaintiff in Equity can, in general, have, in our Superior Courts, all the benefit which is attainable in the English Court, from the order in the English form. He can see the document; can copy it; can show it to his witnesses; can, on the trial, by an *oral* examination of these witnesses, attack it. He is not put to the trouble and expense of depositions, taken before an examiner.

The plaintiff can, in *general*, do this, but there are cases in which he cannot do it, viz: cases in which the witnesses reside out of the county in which the suit is depending; because, in such cases, he cannot compel the witnesses to come out of their counties to testify. (*Cobb's Dig.* 1138-'9. 10 *Equity Rule.*) At least, Courts of Equity practically, do not exercise, if they retain the power, of compelling witnesses to appear out of their counties. It may, perhaps, be said, that the part of the Judiciary Act which gives witnesses this exemption, is confined to Common Law Courts. The Equity *rule* would appear, however, to be intended to do for the Superior Court, as a Court of Equity, what the Statute certainly does for it as a Court of Law.

In such cases as these, what is to be done? Does the power in the Superior Courts fall short of them? Is it beyond the power of those Courts, to submit a document, which they may rightfully get possession of, to the examination of a witness, because they have not power to bring the witness to the document? Can they not carry the document to the witness?

The power to compel discovery in the Superior Courts is, as we have seen, as broad as it, perhaps, can be. It is a power "to compel parties, in *any* cause, to discover, on oath, *all* requisite points, necessary to the investigation of truth and justice".

Now, the power to compel a discovery, as it exists in the

English Court of Chancery, includes within it, as we have seen, the power to compel the production of documents discovered—that is to say, their deposit in Court, subject to be inspected and copied; their production before the examiner; their production at the hearing. In a word, the power to compel a discovery, includes the power to render effectual the discovery, when made—as the grant of the end is a grant of the means necessary to accomplish the end. So must the power in the Superior Courts of Georgia: for it is a power as comprehensive as that in the English Court can be.

This power, in the particular of it under consideration, the English Court can execute, by means of one of its own officers, the Examiner, because it has such an officer, and has power to compel witnesses, no matter where resident, to appear before him. But suppose these means had never existed, or should now be taken away, would the power, in this particular, have had to lie dormant or now have to become dormant? Would the whole end fail, because one means out of a number should fail? Certainly not, unless the execution of the power were specially confined to that one means.

So, although this particular means in use in the English Court, is not at the service of the Courts of this State, it does not follow that means of some sort are not at their service. On the contrary, it follows that means of some sort are at their service. The Legislature, it is to be presumed, intends every grant of power to be effectual. It is, therefore, the duty of Courts, where there is nothing to rebut this presumption, so to construe one, as to make it effectual.

There is nothing to rebut the presumption, in the case of the grant of this power. The Superior Courts, therefore, as Courts of Equity, having general power to compel discovery, have power to render effectual such discovery, when made.

How can that be done in such a case as the present? Only by annexing the writing discovered and produced, to interrogatories, and sending the interrogatories to the county of the non-resident witness, there to be executed, by persons commissioned by the Court, for that particular service, and then to

be returned, with the result of the execution, to the Court. This, therefore, those Courts may permit to be done.

But, as in the doing of this, the writing has almost necessarily to come, more or less, within the possession or power of the party calling for it, and has otherwise to run new risks, of loss, destruction or injury, all for his benefit, he ought to give the other party corresponding security, against such loss, destruction or injury.

With respect, then, to the production of documents, this is what the Superior Courts of Georgia, by bill, may do; and what those Courts, by bill, may do as Courts of Equity—they may, by a ten day's notice, do as Courts of Law.

What, then, amounts to the security referred to? The Court below seems to have held, that "the leaving a certified copy" of the deed, "in the Clerk's office, to be used as evidence in the cause, in the event that original deed" should "be lost, or not returned into Court", would, in this case, be sufficient. At all events, that was all the security the Court exacted.

That security, this Court does not think sufficient. It might, perhaps, serve all the purposes of the pending suit. But would it serve any purpose in a new suit? An action of ejectment, is no bar to another action of ejectment, provided merely the fictitious names be changed. This copy could, at most, be used only against the parties plaintiff, in this 'complaint'. The deed, itself, could be used against them, and equally as well against the whole world. Besides, the deed itself, is a link in its owner's chain of title. When he cannot produce that deed in market, the title which he can produce will, apparently, have a link wanting. The possession of a copy is, for the purpose of supplying this link, by no means equal to the possession of the deed itself.

The security which might be sufficient, would, in the opinion of this Court, be, in addition to the copy provided for in this case, a bond, with good securities, conditioned to be void, if the deed required to be produced, should not be lost, destroyed, or injured, but should be restored to the party producing it, as

soon as the object of its production should have been accomplished.

To the extent, therefore, that the Court below failed to exact such security as this, we think it erred.